VICKSBURG WATER SUPPLY COMPANY *v.* M. O. GORMAN.

1. CONTRACT. *Performance; manner of. Instruction.*

   Where one contracting party is sued in damages for preventing the other from carrying out a contract to do certain work, an instruction for plaintiff is erroneous which, in effect, tells the jury that the defendant, under circumstances named therein, had no right to stop plaintiff if he was prosecuting the work with proper diligence, omitting the qualification that he was doing it in a proper *manner.*

2. SAME. *Misleading instruction. Damages.*

   Such an instruction is also erroneous which refers to different occasions on which plaintiff's work was interfered with, and, accumulating the several hinderances, directs that the jury shall make the plaintiff whole "for the loss thereby occasioned," when it appears that in respect to one or more of the occasions the defendant is not liable.

3. MASTER AND SERVANT. *Act of servant outside of employment. Damages.*

   Where a water company contracts for certain work to be done requiring excavations near its pump-house, and its engineer, as an accommodation for a servant of the contractor, agrees to look after a certain pump of the contractor, but negligently fails to do so, whereby the excavations are flooded from the works of the company, the latter is not liable to the contractor therefor.

4. CONTRACT.    *Change of plan.    Preventing execution.    Damages.*

    Where, under a contract, work is to be done in a certain way, and, after difficulties are encountered, by mutual agreement the contractor begins anew on a different plan, but is afterwards stopped by the other party, in an action against such party for preventing the execution of the contract, the plaintiff cannot recover, as a part of his damages, the value of the work done by him before the original plan was abandoned.

5. PREVENTING EXECUTION OF CONTRACT.    *Reasons for.    Damages.*

    Where work under a contract is being properly done, the fact that its further prosecution endangers certain buildings of one of the parties, is no defense to such party in an action of damages by the other party for stopping the work.  If the defendant contracted for the work as being done, it can only be stopped subject to liability to the other party for preventing the execution of the contract.

6. SAME.    *Partial completion.    Cost of work increased.    Damages.*

    In an action by one party to a contract against the other for preventing the contract from being carried out, the wrongful conduct of the defendant increasing the cost of the work contracted for, though not a distinct cause of action under the declaration, may be considered in estimating what, if any thing, plaintiff is entitled to recover for partial completion.

FROM the circuit court of Warren county.

J. M. GIBSON, ESQ., a member of the bar, was selected by lot, and presided as special judge in this case.  The HON. J. D. GILLAND, Judge, having been of counsel, was disqualified.

Action of damages by appellee against appellant, arising from defendants preventing plaintiff carrying out a contract to do certain work.  The water-station of the defendant, consisting of pump-house, reservoir, and stand-pipe, is situated just east of the Mississippi river, and the Louisville, New Orleans and Texas railroad runs between the river and the works.  The pump-house was connected with the river by two large pipes or mains, which were laid in a tunnel under ground, about thirty feet from the surface, and through which the water was pumped by the defendant for the purpose of supplying the city of Vicksburg.  On October 24, 1889, the pipes having become broken or displaced, the de-

fendant entered into a written contract with plaintiff to do certain work, with a view to re-establishing the water connection with the river.    The contract is too voluminous to be abstracted.    It is to the effect that the plaintiff was to furnish all material, tools and labor necessary for the reconstruction of the tunnel through which said pipes ran, from the pump-well of defendant to a point ninety feet west of said well, and to reset the mains and establish the connection. In order to do this, it was stipulated that plaintiff, at said point ninety feet west of the pump-house, should dig a shaft or well, and reconstruct the tunnel, or that he might dig an open ditch, and reach the pipes in that way.    For this work, plaintiff was to be paid $3,200.25 within ten days after the completion and acceptance of the work; and, at the option of defendant, plaintiff was also to reconstruct the tunnel from the shaft west, to the river, if that should be deemed necessary by defendant after the other work was completed; and, for the work of reconstructing the tunnel from the shaft to the river, if done, plaintiff was to be paid an additional sum.    The work first above mentioned, and for which plaintiff was to be paid the said sum of $3,200.25, was to be completed to the satisfaction of defendant, on or before the twentieth day of December, 1889.

Among other things, it was stipulated in the written contract as follows : "All loss or damage arising from the nature of the work, from the action of the elements, from any unforeseen cause, accident or obstruction, or from any difficulty that may be encountered in the prosecution of the work, shall be borne by the party of the second part [plaintiff] without extra charge or claim against said water company. . . . And it is hereby understood and agreed that the water company shall have the right to suspend or annul the execution of this contract at any time should the party of the second part fail to prosecute the work at a satisfactory rate of progress, or to comply with all the terms herein set forth; and such suspension or annulment shall not affect the

right of said water company to recover any damages resulting from such failure of the party of the second part."

The declaration alleges that plaintiff proceeded to furnish all material, tools and labor, and was prosecuting the work under the contract with skill, diligence and success, and would have completed it within the time stipulated, but that, after doing part of the work, the defendant negligently permitted water from its pump-house to flow in upon and flood the work, thereby rendering the soil soft and difficult to manage, and causing plaintiff increased labor and expense, whereby plaintiff was compelled to attempt the work of reaching the tunnel by means of the open cut; that after this defendant negligently permitted the water from its pump-house to flow into the excavation or cut, impeding his work, and again putting him to great expense and trouble; but that plaintiff endeavored still to comply with said contract until January 15, 1890, when defendant compelled him to desist from the work. Plaintiff filed with the declaration an itemized account of the expense, and a statement of the value of his labor and skill, alleging that he was damaged $7,437.77.

Defendant demurred to the declaration, and the demurrer was overruled. In view of the opinion of the court, it is not deemed necessary to state the grounds of the demurrer. Defendant also moved the court to require plaintiff to amend the declaration, so that it might appear more definitely whether the cause of action is based upon negligence or for breach of contract—whether *ex delicto* or *ex contractu*—and this motion was overruled. The defendant then pleaded the general issue, and gave notice thereunder of contributory negligence on the part of plaintiff; also that the flooding complained of was caused by the accidental breaking of one of its pipes, which breaking could not be foreseen or avoided; that the loss sustained by plaintiff resulted from unforeseen causes, and from the action of the elements; that plaintiff failed to comply with the contract,

and had failed to prosecute the work at a satisfactory rate of progress; that the failure to complete the work was due to his own neglect and want of skill; that he negligently made excavations, and failed to take proper precautions to prevent water going into the same; that by reason of the negligent work of plaintiff, the building of defendant was endangered, and that the further prosecution of the work would have greatly endangered the building by the annual overflow of the Mississippi river, which would have been inevitable before the work could have been completed as plaintiff was then progressing; that defendant had been greatly damaged by the negligent work of plaintiff.

Plaintiff's testimony tends to show that he furnished all the material, tools and labor necessary to complete the work according to the contract, and went to work diligently on the twenty-eighth day of October, 1889, and would have complied with the contract within the time limited but for the negligence of defendant. He had begun the shaft at the point indicated in order to reach the broken pipe connection, and the shaft was about twenty-two feet deep by the fourth of November, 1889. He had placed the earth excavated from it around the mouth, like a levee, to protect it from water running in. He discovered that the drain-pipe, coming from defendant's pump-house, and discharging waste-water from its engine (which was pumping water from the river), was broken, and, on the fourth of November, called the attention of the superintendent of defendant to the broken pipe, and to the danger of the shaft being flooded. But the pipe was not fixed, and that night the water from it broke through the levee and filled the shaft. Prior to this, plaintiff's testimony tended to show, the ground was firm. The attention of defendant's superintendent being called to this, plaintiff's testimony showed that he admitted that the engineer of defendant had been at fault, and told plaintiff to bail out the water, and that he would make the loss good. The evidence was somewhat conflicting on the question as to whether plaint-

iff was at fault or was guilty of contributory negligence as to this flooding, and as to whether it made the ground wet after the water was taken out. The proof showed that the soil was like quicksand, and, when wet and soft, it was with great difficulty that it could be handled. After this occurrence of November 5, plaintiff bailed the water out, and carried the shaft to the bottom, timbering it, which was made necessary, as he contended, by the flooding. He then opened the tunnel, twelve feet from the bottom of the shaft, in the direction of the pump-house, and timbered that. Defendant's testimony tended to show that the soil at the bottom of the shaft, and in the vicinity of the old tunnel, was soft and saturated with water from springs, and not from defendant's pumps; but there was a conflict of testimony as to this. Plaintiff dug a basin at the foot of the shaft to hold the seepage-water, and put a pump in it to take the water out. This pump was at first driven by steam, but the superintendent of the company suggested that plaintiff should run the pump by water-pressure by a pipe from defendant's pump-house. This pump was put in. It was a siphon. When the stream of water from the pump-house was turned on with sufficient pressure, it would pump the water out of the catch-basin, but, when the pressure was not sufficient to run the siphon, it would fill the shaft with water. On the night of November 17, 1889, plaintiff's engineer, being sick, asked the engineer of defendant to run this pump for him. He was instructed how to turn on the water so as to get the right pressure, but he turned it on insufficiently, and the consequence was that the water failed to go out through the siphon, and the shaft was that night flooded with water to within ten feet of the top. This was the second accident.

After this, owing to the conditions, and especially the character of the wet soil, it seemed almost impossible to carry out the work by means of the tunnel, but plaintiff continued to labor at it until December 5, when he had a conversation with the superintendent of defendant, who advised

him to close up the end of the tunnel and make an open cut—that is to say, commence at the top of the ground and dig a ditch down to the bottom of the tunnel, removing all the dirt from the cut, and driving piles on the sides to prevent caving, bracing the piling and planking it up on the sides. Thereupon, on the suggestion of defendant's superintendent, plaintiff abandoned the tunnel, and went to work to reach the pipes by means of the open cut, and he was told by the superintendent that he should have all the time needed to complete the work. In consequence of being wet, the earth was soft and oozed up, and plaintiff was compelled to go to the expense of procuring a pile-driver, and an engine to run it, in order to drive piling on the sides of the ditch, and he was also compelled to go to additional expense of procuring large timbers for the piling, and an engine to hoist the material.

Plaintiff's testimony tends to show that he then proceeded with the work satisfactorily, considering the difficulties, until about the first of January, 1890, when the water came in through the breaking of a defective pipe in defendant's pump-house, and filled the ditch which plaintiff was digging. The pipe, which plaintiff's testimony tends to show was defective, and which burst, causing the open cut to be overflowed, was one of the large pipes that conveyed the water, pumped by defendant's engine, from the reservoir to the stand-pipe, and had a heavy pressure on it. The testimony tends to show that plaintiff called attention of defendant's engineer to defects in this pipe, and requested him to fix it, telling him, at the same time, that there was danger that the water from the stand-pipe would flood his work. Nothing was done, and the next morning the open cut was flooded with water, as above stated. Defendant introduced evidence tending to show that, just before the breaking of the pipe in the pump-house, it was examined by defendant's engineer, in company with the engineer of plaintiff, and that they found no defect therein.

After this flooding, plaintiff pumped the water out, and again went on with the work, as the evidence tends to show, with diligence, until about the fifteenth of January, when he was compelled by defendant to quit work. At that time he had nearly two-thirds of the cut finished. It was about twenty feet deep at the west end, and about six feet deep at the east end.

The testimony for defendant tends to show that the method adopted by plaintiff, and the plan for his piles, were inadequate, expensive and impracticable; that the work was not properly protected by the piling, and that the quicksand and soft earth filled in after if was removed; that the work could not be completed according to his plans; and, as it stood when plaintiff was stopped, it endangered the building of defendant, which was liable to fall down; that the work had then long been delayed, and that the flood level of the Mississippi river was then far above the bottom of the excavation; that there was a threatened overflow of the river, in the event of which there would be no way to protect the building except to stop the work immediately, and fill up the excavation, which was done by the company; that about two weeks after the work was stopped, it was overflowed by the river.

Plaintiff's testimony tends to show that, but for the flooding, he would have completed the work at the cost of $1,550, leaving a profit of $1,650.25; that he was put to extra expense, amounting to $3,131.53, which sum he had expended on the work; that this did not include his own services, or any profit; and that if he had not been interfered with by defendant, he would have completed the work in about three weeks, whereas he was engaged nearly three months.

The following instructions were given for the plaintiff:

"1. If the jury believe from the evidence that the defendant negligently permitted the water from its pump-house to flood the work, and thereby increased its difficulty, and put the plaintiff to extra expense over and above what the work

would have otherwise cost him, and delayed the work, so that it could not, with reasonable diligence, be completed within the contract time, and that the defendant extended the time for the completion of the work to such time as might be reasonably necessary therefor, and that the plaintiff, while engaged in prosecuting the work with such reasonable diligence, was notified by defendant to quit, and compelled, with threats of arrest, to quit the work, and was thereby prevented from completing the same, the jury will find for the plaintiff, and assess his damages at such sum of money as will make the plaintiff whole for the loss thereby sustained by the plaintiff.

" 2. In assessing the plaintiff's damage as aforesaid, the jury should give the plaintiff a sum which the evidence may show he would have made as a profit on the original job, and also such additional sum as the evidence may show the work done by him reasonably cost.

" 3. It was the duty of the defendant to keep its pipes and appliances in reasonably safe condition and repair, so as to not injure the work, and if the jury believe from the evidence that the defendant, when his attention was called to the condition of the pipe in the pump-house, could have ascertained, by applying reasonable tests, that the pipe was defective, and yet that the defendant neglected to apply such tests, then the defendant is liable for the consequent bursting of that pipe."

The following instructions were given for defendant, the words in italics the court having added by way of modification:

" 3. The court instructs the jury that defendant is not liable to plaintiff for any damage on account of the flooding of the tunnel about the night of November 17th, 1889, on account of ·the failure of the action of the siphon pump, and the defendant is not in any way responsible for any delay caused thereby to plaintiff's work, or for any extra expense to which plaintiff was put in consequence thereof."

" 6. If the jury believe from the evidence in this case, that

on the night of the fifth of November, the shaft was flooded with water from a break in defendant's waste-pipe, and if they further believe that the plaintiff knew of such break, and the danger of the flow of water therefrom, and could himself, by taking the proper means of precaution, or by using ordinary care, have protected his shaft from such danger, and prevented the flow into the same, and the plaintiff failed to do so, then, in such case, the defendant is not liable for that accident."

"16. If from the evidence the jury believe that the plaintiff knew of the danger of water flowing into his shaft on the fifth of November, and took no steps to prevent it, then the defendant is not liable for the accident. Although the jury may believe that said flooding of said shaft may have been caused by the negligence of the defendant, yet it was equally the duty of the plaintiff, if he knew of the danger, to have taken such means as a careful and prudent man would, under the circumstances, to have prevented the accident, and if he failed to do so, he cannot hold the defendant liable for the act."

"17. The plaintiff cannot recover of the defendant for any damage caused by the breaking of the pipe in the pump-house unless the evidence shows that the breaking of said pipe was caused by some act of negligence or carelessness on the part of the defendant.

"18. If the jury believe that, just prior to the breaking of said pipe, it was examined by the engineer of the water-works company, in company with the engineer of the plaintiff, and they found no defect in the pipe that broke, and, further, that defendant had no reason to believe that the pipe was defective, then they are not responsible to the plaintiff for its breaking.

"19. If the jury believe that there was a drain-pipe from the cellar, and that the end of this had been covered by the plaintiff so that the water from said cellar could not be drained away; and if they further believe that the water flowed from a break in defendant's pipe into the cellar, and

thence into the plaintiff's work, but that it would not have done so if the drain-pipe had not been closed, then defendant is not liable.

" 20. It is incumbent upon the plaintiff, before he can recover, to establish, by a preponderance of the evidence, to the satisfaction of the jury, all the facts or fact for which defendant is liable.

" 21. Before the jury should hold the defendant liable even for the flooding of the shaft or open cut by water from defendant's work, they should be satisfied, by a preponderance of the evidence, that such flooding was caused by the negligence or carelessness of defendant. But, if such accidents, or either of them, was due to the negligence of the plaintiff, or due to the nature of the work, action of the elements, any unforeseen cause, or obstruction or accident *without fault of defendant*, or any difficulty that was encountered in the prosecution of the work, then, in such case, the defendant is not liable.

" 22. It was the duty of the plaintiff to have prosecuted his work with diligence, and at a reasonable and satisfactory rate of progress; and if, from the evidence, the jury believe that the plaintiff, on the fifteenth day of January, 1890, was not prosecuting said work at a reasonable and satisfactory rate of progress, and had not been so prosecuting it before then, *and defendant was without fault as to accident or delay*, then the defendant had the right to stop said work, and the plaintiff is not entitled to recover. .

" 23. If the jury should believe from the evidence in the case that, on the fifteenth day of January, the work was not progressing satisfactorily, and that it was not likely to be finished without endangering the building from the floods of the river, then they should find for the defendant, *provided the failure to have made such satisfactory progress was not due to the negligence of defendant.*

" 24. If the evidence shows that the accidents to plaintiff's work, and the difficulty encountered, were not due to defend-

ant's negligence, and that on the fifteenth day of January, 1890, and before then, the work was not progressing at a reasonable and satisfactory rate of progress, then plaintiff cannot recover.

" 25. If, from the evidence, it be uncertain in the mind of the jury whether the expenses incurred by Gorman, and difficulties he encountered, were due to elements and the character of the soil and surrounding conditions, or to the flow of water caused by the negligence of the defendant, they should resolve such issue in favor of the defendant.

" 26. If the jury should believe that the defendant was at fault, and caused the accident of the flood of November 5, but was not at fault otherwise, then they can only find for plaintiff for the injury directly due to said accident."

Besides a peremptory instruction to find for defendant, the following instructions asked by it were refused:

" 2. The defendant is not liable for any injury to plaintiff, or for any delay in prosecuting his work which may have been occasioned by the flowing of water into his shaft on or about the night of November 5, 1889, from defendant's waste-pipe."

" 4. The court instructs the jury that the defendant is not liable to the plaintiff for any damage, delay or injury done him in and about the prosecution of the work caused by the breaking of defendant's pipe in its pump-house on or about the night of January 4, 1890, and by the flowing of the water, in consequence, into the open cut of plaintiff's work.

" 5. Under the proof in this case, the defendant is not liable to plaintiff for any damages or injury resulting to him, or for any delay in the prosecution of the work, or for any extra expense incurred by him, either by reason of the flowing of water into the shaft from defendant's waste-pipe, on or about November 5, 1889, or from the flooding of his tunnel, on or about November 17, from the siphon pump, or by reason of the breaking of defendant's pipe in its pump-house, and the flow of water therefrom into the open cut made by plaintiff, on or about the night of January 4, 1890."

"7. If, from the evidence, the jury should believe that, on the fifteenth day of January, 1890, the pump-house of defendant was endangered by the then condition of the work, then the defendant had a right to stop the work, and is not liable to the plaintiff for any damage resulting from such stoppage.

"8. If the jury believe, from the evidence, that, as a matter of prudence, it was proper that the prosecution of the work on the fifteenth day of January should have been stopped on the fifteenth day of January, in order to avert any threatened danger, as may be shown by evidence, to said building, then the defendant is not liable to the plaintiff for having stopped the work.

"9. If, from the evidence, the jury believe that, on the fifteenth day of January, 1890, the defendant had reasonable ground to apprehend that a further prosecution of the work as it was then being conducted by the plaintiff would endanger defendant's building, then the defendant had a right to stop the work, and the defendant is not liable to plaintiff for such stopping.

"10. If, from the evidence, the jury believe that on the fifteenth day of January, 1890, the condition of the work, as it was then, endangered the defendant's building, or if they believe that the further prosecution of the work in the manner in which it was being conducted would endanger it, or that it would be endangered by the threatened overflow of the Mississippi river, which the evidence shows may have been impending before the said plaintiff could complete said work, then the defendant had a right to stop the work, and is not liable to the plaintiff.

"11. If the evidence shows that the accidents to plaintiff's work were not caused by defendant's negligence, and that the work, on January 15, as then being prosecuted, was not, and had not been, at a reasonable rate of progress, or was endangering defendant's pump-house, then defendant cannot recover.

" 12. If the engineer of plaintiff undertook, in company with that of defendant, to examine the pipe just before it broke to ascertain any defect, then plaintiff cannot complain that such examination was not carefully made.

" 13. The defendant had a right to stop the work of plaintiff if said work was not being prosecuted at a satisfactory rate of progress, and, of this, it was the option and right of defendant to determine reasonably according to its judgment and stand-point.

" 14. This being an action *ex contractu*, the plaintiff is not entitled to recover for damages incurred by reason of any negligence of defendant in operating its works, by reason whereof plaintiff's works were flooded with water.

" 15. The plaintiff is not entitled to recover for any profits he may have made on the work, and for his services also."

The jury found for plaintiff in the sum of $3,131.50, with interest from January 25, 1890, aggregating $3,473.73, and judgment was entered accordingly. Defendant's motion for a new trial being overruled, he appealed. The opinion contains a further statement of the case.

*L. H. Magruder*, for appellant.

1. Plaintiff's first instruction is erroneous. Something more than mere diligence on plaintiff's part was involved. There is abundant testimony to show that the work was not being *properly* done ; that it was useless, besides endangering defendant's building.

This instruction is also erroneous, because it is in direct conflict with defendant's third instruction, to the effect that plaintiff could not recover by reason of the flooding occurring on the night of November 17th. The accident of November 5th was of trifling character, and the testimony shows that $75 would have been a reasonable allowance therefor. For all the hinderances, the whole of the work and all expenses, the jury charged the defendant under this instruction.

The converse of the first-mentioned proposition is embraced in defendant's 7th, 8th and 9th instructions, which should have been given, but were refused. If defendant's building was endangered by the existing condition of the work, and its further prosecution, defendant had a right to stop plaintiff. The universal rule is that where an employe refuses to complete the work, or fails to do so, he can only recover from the employer the contract price of the work, less cost of completion. 2 Sutherland on Dam., title Employer and Employe.

The error in refusing defendant's 11th instruction is plainer still. That error was not cured by any of the instructions that were given. If plaintiff had not complied with his contract, and, besides, was endangering defendant's building, manifestly defendant had a right to stop the work. The evidence is undisputed that the building was endangered because of the manner in which the work was being executed, and because of the anticipated flood of the river. If the building was in danger, then, the work being valueless, defendant's only remedy was to fill the excavation, and the plaintiff could not recover any thing.

2. Plaintiff's second instruction should not have been given. It is well settled that, in cases like this, the employer has a right to abandon the work, and stop the contractor from further progress, being liable, of course, for all consequences resulting from a breach of the contract. The contractor may sue on the contract, in which case the measure of damages is the contract price reduced by such amount as would reasonably suffice to finish the job ; or he may ignore the broken contract, and sue on a *quantum meruit.* In either case, the true question is, *what was the work worth?* *Whitfield* v. *Zellnor*, 24 Miss., 663; 39 Md., 194; 80 Ill., 493; 7 Hill (N. Y.), 61; 8 Wall., 77; *United States* v. *Behan*, 110 U. S., 338.

A party cannot, at the same time, hold on to a contract and abandon it; he cannot claim profit under it, and repudi-

ate the contract price, as the plaintiff attempts to do in this suit.

This is clearly not a suit on the contract. If it were, there could be no demand for the sum in excess of the contract price. Plaintiff has, by the form of his action, if not otherwise, rescinded the contract, and sues on a *quantum meruit*. This being so, there can be no question of loss or profit. The question is as to the reasonable value of the work done. The instruction given for plaintiff tells the jury, in effect, that defendant must pay for all work done, whether properly done or not, and for all material used.

For the accident of November 5, defendant is not liable, and its second instruction ought to have been given. The evidence shows that the shaft was a mere hole in the ground, which could have been easily protected. It was the plaintiff's negligence that the water ran into it, and, besides, the danger was of insignificant consequence.

3. Defendant's fourth instruction, to the effect that it was not liable for the breaking of the main pipe in the pump-house about January 1, should have been given. There is no evidence whatever upon which to base negligence against defendant for the breaking of that pipe, except the mere fact that it broke. The defendant was not called upon by any circumstances to make an examination or a test of that part of the pipe. There are defects in iron pipes which, curiously enough, result in accidents under any circumstances. The mere fact that the pipe burst is no evidence of negligence. The general rule is, that the burden in an issue of negligence is on the plaintiff to prove it. 1 Sher. & Redf. on Neg., § 57.

There are conditions under which the very happening of a disaster carries evidence of negligence. But these are exceptions to the well-established general rule; they must themselves be assignable to some principle justifying the exception. *Ib.*, 59. Here the nature of the use and of the casualty indicate that the accident must have been a result of a secret defect, of which defendant could have had no notice

and no especial knowledge. It falls within the class mentioned in Rorer on Railroads, 1200, 1201.

4. The verdict in this case is so unjust and unrighteous that it is almost wicked, and, for the errors assigned, I confidently believe it ought to be reversed.

*M. Marshall*, for appellee.

Independently of the general duty every man owes to others, there arose from the contractual relations between the parties an obligation on the part of defendant to do every thing expressly undertaken, and impliedly such things as were necessary to the successful carrying out of the contract, and to refrain from interference therewith. Defendant did not exercise a higher degree of care than it owed under its contractual relations, and did not perform the duty it would have owed even to a stranger. It negligently flooded plaintiff's work three times. It might have been sufficient for plaintiff to have rested his case *prima facie* upon the mere happening of these things. 2 Thomp. on Neg., 1228, 1229, 1230. But plaintiff's case did not rest upon the general presumption; defendant was guilty of neglect of its duty of guarding against the danger arising from the operation of its own water-works. The occurrences of November 5 and 17, and that which happened between January 1 and 4, demonstrated culpable negligence on the part of defendant.

As to the first flooding, the defense is contributory negligence. But plaintiff used ordinary care. Again, his failure to anticipate negligence on the part of the defendant was not contributory negligence. 2 Thomp. on Neg., 1160, 1172. While, ordinarily, the defendant would not have been an insurer against the consequences of the acts of its engineer, yet, if the acts were wrongful *per se*, it is liable. *Ib.*, 1235, If it had wilfully flooded the work of plaintiff, it would have been deprived of the defense of contributory negligence. Here it was guilty of negligence after due warning. Independently of the contract, it was bound to use reasonable

care to guard against injury to plaintiff. 2 Thomp. on Neg., 1233, 1234.

As to the flooding of November 17, it is an improper use of terms to say that the engineer of defendant undertook to turn on the water as an act of accommodation to plaintiff. But it is a mistake to suppose that one can undertake a duty he was not bound to undertake, and, failing to discharge it with care, leave the other party relying upon him to suffer the consequences.

As to the third flooding, about January 1, when the attention of defendant's engineer was called to the condition of the pipe with a heavy pressure on it, it was the duty of defendant to take steps and ascertain what its condition was as to safety; yet nothing was done. It is no answer to say that plaintiff's engineer examined the pipe. It was out of his line of business to determine as to its safety.

The instructions for defendant gave it all that it was entitled to and more. Every defense it was entitled to make was fairly submitted to the jury. It was proper to refuse the peremptory instruction and the others which were asked by defendant. These were based upon the idea that there were no circumstances to be determined by the jury. The circumstances of the application to them were complicated and involved, depending upon conflicting testimony. See 2 Thomp. on Neg., 1235, 1236. The question of negligence is a mixed one of law and facts, to be determined by the jury where the facts are controverted. *Ib.*, 1664, 1665, 1666.

It was proper to refuse the instructions which stated that defendant had a right to stop the work if its property was in danger. It could not save itself at the expense of plaintiff.

The right of defendant to stop the work under the terms of the contract was conditional upon the failure of plaintiff to properly carry it out, and not upon any danger to the pump-house. Defendant's refused instructions sought to make its danger without plaintiff's fault deprive him of the

right of compensation. On this point see Bishop on Con., § 1431; *Ib.*, § 1441 *et seq.*

Defendant's 14th instruction was properly refused. The form of the declaration is immaterial. It is sufficient to state the facts in ordinary and concise language. Code 1880, § 1536. But, treating this as an action *ex contractu*, if complete performance of the contract be prevented by either party, the other, who is able and willing to perform, shall be compensated in damages to the extent of the making him whole. *Friedlander* v. *Pugh*, 43 Miss., 111; 'Bishop on Con., § 1431.

There is no ground of objection to plaintiff's first instruction. If plaintiff had completed the work, it would have cost him, but for the act of defendant, $1,550, and he would have made $1,650.25, yet he was allowed nothing on account of profit. The verdict gave him only what the work cost. The plaintiff did not sue for the contract price. The damage that he suffered was the loss of every dollar that he had expended, and his profit. There was no conflict of evidence as to what this was. The sole·controversy was: (1) Whether defendant was negligent, (2) whether plaintiff was guilty of contributory negligence, (3) whether defendant had the right to stop the work scathless.

Argued orally by *L. H. Magruder*, for appellant, and *M. Marshall*, for appellee.

CAMPBELL, C. J , delivered the opinion of the court.

The first instruction for the plaintiff is erroneous, in omitting the qualification that the prosecution of the work was in a proper manner as well as with proper diligence. Even if it was being prosecuted diligently, if it was not done properly, the plaintiff cannot complain of being stopped. Another objection to this instruction is that it seems to point to the several occasions when water from the pump-house flooded the work-place of the plaintiff, and, accumu-

lating the several hinderances he suffered from these com-
bined, directs the jury to make the plaintiff whole "for the
loss thereby occasioned the plaintiff." There should not be
such blending, for the loss from the overflow of November
5 was a thing by itself, having no sort of connection with
what subsequently occurred. It stood alone, and, if the de-
fendant was liable for that, it is merely an item of the
plaintiff's claim, and should not be made to form part of a
structure on which to found a claim for what occurred after-
wards. The court instructed the jury that, for the flowing
of water on the seventeenth of November, the defendant
was not liable, and yet the first instruction for the plaintiff
is broad enough, and was probably understood to embrace
the occurrence of November 17 as one of the hinderances
to plaintiff, for it was after November 17, and when the
plaintiff complained to the superintendent of the defendant
of this hinderance, that he was told he could have all the time
needed. The several different occurrences should be viewed
separately, for they are quite distinct. That of November 5
was not only trivial and insignificant, but has no connection
with any other. For that of November 17, the defendant
was held not liable.

The plaintiff continued his operations until, baffled by the
difficulties encountered, he sought and obtained the opinion
of the superintendent of the defendant, who advised him to
quit the subterranean work, and dig an open trench. This
was December 5, and after this the plaintiff abandoned his
former work, and began anew on a different plan. Certainly,
for all the work done prior to this, the plaintiff has no claim
on the defendant. That was a loss to him which cannot be
visited on the defendant. The plaintiff's claim, besides the
item of November 5, must begin on or after December 5,
with the open ditch or canal, and be confined to what per-
tains to that. If wrongfully prevented by the defendant
from executing his contract by the new plan, he should re-
cover the value of what was actually done in execution of

the contract, and any specific damage which he shows he sustained by the wrongful acts of the defendant. Therefore, the second instruction for the plaintiff is not applicable, and should not have been given.

The defendant's theory of the case was fairly submitted to the jury by the instructions given for it, and no error is perceived in the action of the court refusing a number of . instructions asked by the defendant, or in the modification of those given.

Several of the instructions refused assert the right of the defendant to stop the work on the canal without liability, if thereby the safety of its buildings was threatened. That depends on whether the work was being properly prosecuted. If it was, it was not the right of the defendant to stop the work at the cost of the plaintiff. If it contracted for the work as being done, and, because of a rise in the river or other occurrence, it became more desirable to stop the work than to permit its completion, it could do so only subject to liability for any wrong thereby done to the plaintiff.

The fourteenth instruction for defendant was properly refused, because, while the alleged injury by overflowing the canal from the pump-house of the defendant is not a distinct cause of action and ground of recovery of damages for it in this action, it was a matter for consideration in estimating what, if any thing, the plaintiff may recover for the partial completion. of the work contracted for. If the work done was recoverable for, and it was made more costly to the plaintiff by the wrongful act of the defendant, due allowance should be made for that in determining the amount of recovery for partial execution of the contract.

*Reversed, and remanded for a new trial.*